# United States Court of Appeals

## For the First Circuit

Nos. 00-2326
    01-1543

RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT,
STATE OF RHODE ISLAND,
Plaintiffs, Appellees,

v.

UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF LABOR;
ELAINE CHAO, SECRETARY OF LABOR; OCCUPATIONAL SAFETY AND HEALTH
ADMINISTRATION; CHARLES N. JEFFRESS, ASSISTANT SECRETARY OF LABOR
FOR OCCUPATIONAL SAFETY AND HEALTH; RUTH E. MCCULLY, REGIONAL
ADMINISTRATOR REGION 1, OCCUPATIONAL
SAFETY AND HEALTH ADMINISTRATION,
Defendants, Appellants,

BEVERLY MIGLIORE; BARBARA RADDATZ; JOAN TAYLOR,
Defendants, Appellants.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND
[Hon. Ernest C. Torres, U.S. District Judge]

---

Before
Boudin, Chief Judge,
Coffin, Senior Circuit Judge,
and Torruella, Circuit Judge.

---

Mark B. Stern, with whom Stuart E. Schiffer, Acting Assistant
Attorney General, Margaret E. Curran, United States Attorney, and
Alisa B. Klein, were on brief for the United States appellants.
    Daniel P. Meyer, with whom Joel D. Landry, Sr., were on brief
for appellants Migliore, Raddatz and Taylor.
    Jonathan M. Gutoff, was on brief as amicus curiae, American
Civil Liberties Union, Rhode Island Affiliate.
    James R. Lee, Assistant Attorney General, with whom Sheldon
Whitehouse, Attorney General, and Deborah A. George, Senior Legal
Counsel, were on brief for appellees.

---

August 30, 2002

---

**TORRUELLA**, **Circuit Judge**.  The State of Rhode Island brought suit in the district court seeking to enjoin certain federal administrative proceedings on the ground that the proceedings infringed upon the state's constitutionally protected sovereign interests.  Finding the state's arguments convincing, the district court enjoined the United States Department of Labor and three employees of a Rhode Island state agency from proceeding in an administrative adjudication of the employees' claims that the state had retaliated against them in violation of federal law.  The United States and individual employees now appeal the order entering the injunction.

After fully considering the parties' contentions, which were ably briefed and very well argued, we affirm the judgment of the district court, with only slight modification to its order.

**I.**

**A.  Statutory Background**

The Solid Waste Disposal Act ("SWDA" or "Act"), 23 U.S.C. §§ 6901-6992k, is a comprehensive environmental enactment designed to promote the reduction of hazardous waste and the treatment, storage, or disposal of such waste so as to minimize threats to human health and the environment.  Id. § 6902(b).

The Act contains a whistleblower provision that prohibits an employer from firing or otherwise discriminating against an employee who initiates or testifies in a proceeding brought pursuant to the Act.  Id. § 6971(a).  The Act establishes an

-2-

administrative scheme by which an employee who believes that he was the victim of a retaliatory adverse employment action may seek review of the employer's decision by the Secretary of Labor.[1] See 29 C.F.R. pt. 24.

### 1. Initial investigation

Under this administrative scheme, an employee may, within thirty days of the alleged retaliation, apply to the Secretary of Labor for a review of the firing or alleged discrimination. 42 U.S.C. § 6971(b). The Act directs the Secretary of Labor ("Secretary"), upon receiving such an application, to cause an investigation to be made as the Secretary deems appropriate. Id. By regulation, an initial investigation is conducted by the Office of the Assistant Secretary of the Occupational Safety and Health Administration ("OSHA"). 29 C.F.R. § 24.4(b). The regulations authorize OSHA, in the course of this investigation, to enter and inspect places and records, question persons who are being proceeded against and other employees of the charged employer, and require the production of any documentary or other evidence deemed necessary to determine whether a violation of the law has been committed. Id. Within thirty days of receipt of the employee's

---

[1] The same administrative enforcement mechanism applies to the whistleblower provisions in several other environmental statutes. See 29 C.F.R. § 24.1; see also 15 U.S.C. § 2622 (Toxic Substances Control Act); 33 U.S.C. § 1367 (Water Pollution Control Act); 42 U.S.C. § 300j-9 (Safe Drinking Water Act); 42 U.S.C. § 5851 (Energy Reorganization Act); 42 U.S.C. § 7622 (Clean Air Act); 42 U.S.C. § 9610 (Comprehensive Environmental Response, Compensation, and Liability Act).

application, OSHA must complete the investigation and determine whether a violation has occurred.  Id. § 24.4(d)(1).

## 2.  Opportunity for an administrative hearing

The statute requires the Secretary to provide, on request of either party, an opportunity for a hearing to enable the parties to present information relating to the alleged violation.  42 U.S.C. § 6971(b).  Upon such a request, OSHA's initial determination becomes inoperative, 29 C.F.R. § 24.4(d)(2), and the matter is assigned to an administrative law judge ("ALJ") within the Department of Labor, id. § 24.6(a).  A hearing before the ALJ is conducted in accordance with the formal hearing provisions of the Administrative Procedure Act ("APA"), set forth at 5 U.S.C. § 554.  42 U.S.C. § 6971(b).  The employer and employee are entitled to be represented by counsel at the hearing, present evidence on their behalf, and, upon request, present oral argument and file a prehearing brief or other written statement of fact or law.  29 C.F.R. §§ 24.6(d), (e)(1)-(3).  At her discretion, the Secretary may intervene in the matter as a party or amicus curiae at any time during the proceedings.  Id. § 24.6(f)(1).

At the end of the hearing, the ALJ issues a recommended decision.  Id. § 24.7(a).  If the ALJ finds in favor of the complainant, a recommended order that includes a recommendation as to appropriate relief is issued.  Id. § 24.7(c)(1).

The ALJ's recommended decision becomes final unless a petition for review is filed with the Administrative Review Board ("ARB"), id. § 24.7(d), a body to which the Secretary has

-4-

delegated the authority to issue final decisions, id. § 24.8(a). The ARB is composed of three members, each of whom is appointed by the Secretary for a term not to exceed two years. See Authority and Responsibilities of the Administrative Review Board, 61 Fed. Reg. 19,978, 19,789 (May 3, 1996).

The ARB reviews the decision of the ALJ to determine whether a violation of the law occurred. 29 C.F.R. § 24.8(d)(1). If the ARB determines that a violation did occur, it shall order the party charged to take "appropriate affirmative action to abate the violation," including reinstating the complainant and compensating the complainant for back pay and other compensatory damages. Id. The ARB, at the request of the complainant, shall also award attorney fees and costs. Id. § 24.8(d)(2); 42 U.S.C. § 6971(c). If the ARB concludes that no violation occurred, it must issue an order denying the complaint. 29 C.F.R. § 24.8(e).

### 3. Enforcement of the Secretary's orders

Unlike a court, the Secretary does not have inherent authority to issue enforceable orders, and the SWDA does not give the Secretary the power of contempt, mandamus, or the like. Thus, any enforcement of the Secretary's orders must occur in court. Specifically, the Act directs that the Secretary's final determinations under the whistleblower provisions are subject to review in the court of appeals in accordance with judicial review provisions of the APA, 5 U.S.C. §§ 701-706. See 42 U.S.C. §§ 6971(b), 6976(b); see also Varnadore v. Sec'y of Labor, 141 F.3d

-5-

625, 630 (6th Cir. 1999); Simon v. Simmons Foods, Inc., 49 F.3d 386, 389 n.2 (8th Cir. 1995).

## B.  Factual Background and Proceedings Below

### 1.  Administrative proceedings

The State of Rhode Island and the Rhode Island Department of Environmental Management ("DEM") brought this action to enjoin four separate administrative proceedings brought pursuant to the whistleblower provision of the SWDA.[2]  The complainants in these proceedings were DEM employees Beverly Migliore, Barbara Raddatz, and Joan Taylor (the "individual appellants").  They each allege that the state agency retaliated against them for reporting what the employees believed to be an improper implementation of the SWDA.  See Rhode Island v. United States, 115 F. Supp. 2d 269, 270-71 (D.R.I. 2000).  Migliore also filed a second charge based on her allegation that DEM had retaliated against her for initiating the first proceeding.  Id. at 271.  The relief that each complainant sought included monetary and injunctive relief.  Id.

The four proceedings were at different stages when the district court enjoined further action.  In Migliore's first proceeding, an ALJ had issued a recommended decision awarding her $843,000 in monetary relief, and the DEM filed a petition with the ARB for review of the ALJ's decision.  Id. at 272.  In the second

---

[2]  The state asserted in the administrative proceedings that sovereign immunity barred the individuals' claims, but its entreaties were rejected by the ALJ.  The regulations governing the proceedings provide no formal mechanism for interlocutory review of immunity determinations.

proceeding initiated by Migliore, OSHA had issued an order awarding Migliore $10,000 in monetary relief, and the DEM requested a hearing before an ALJ.  Id.  In the proceeding initiated by Barbara Raddatz, OSHA found no violation, and Raddatz requested a hearing before an ALJ.  Id.  Joan Taylor's allegations were still under investigation when the district court's injunction issued.[3]  Id.

## 2.  Proceedings in the district court

In ruling on Rhode Island's motion for a preliminary injunction, the district court held that the administrative proceedings were barred by sovereign immunity principles.  The court observed that in Alden v. Maine, 527 U.S. 706 (1999), the Supreme Court had contrasted a suit brought by the United States with a suit brought by a private party and explained that "'[s]uits brought by the United States itself require the exercise of political responsibility for each suit prosecuted against a State, a control which is absent from a broad delegation to private persons to sue nonconsenting States.'"  Rhode Island, 115 F. Supp. 2d at 273 (quoting Alden, 527 U.S. at 756).  The district court concluded that the same reasoning applied to federal administrative proceedings.  In the court's view, the Secretary could investigate alleged violations of federal law and determine appropriate relief, but the Secretary could not rely on privately prosecuted adversary proceedings in making that determination.  Id. at 274.

---

[3]  OSHA subsequently found that Taylor's allegations had merit, and the DEM requested a hearing which, due to the injunction, has not taken place.

The court entered a preliminary injunction barring any further prosecution before the Department of Labor of the employees' claims against the state agency. Id. at 279. Although the court did not enjoin OSHA from investigating the alleged violations on which those claims were based or from otherwise seeking to ensure the state's compliance with federal law, id., its ruling does not seem to allow the administrative proceedings to continue if the Secretary decides to intervene to prosecute the complaints on the individuals' behalf.

Because the district court had effectively decided the case on the merits, the parties filed a stipulation to convert the preliminary injunction into a permanent injunction and enter final judgment. The court entered final judgment pursuant to that stipulation.

The United States and individual appellants filed separate notices of appeal. However, the individual appellants filed their notices of appeal in response to the district court's granting of the preliminary injunction. The individuals' notices were then rendered moot by the entry of judgment and a permanent injunction. See Chaparro-Febus v. Int'l Longshoremen Ass'n, 983 F.2d 325, 331 n.5 (1st Cir. 1993) (finding plaintiffs' complaints on appeal concerning denial of preliminary injunction to be moot given final judgment dismissing case). Accordingly, this Court dismissed the individuals' appeals. The individual appellants' then moved for rehearing and for consolidation with the United States's appeal. We concluded that the consolidation motion served

as the functional equivalent of a notice of appeal, was timely filed, and thus conferred jurisdiction. We therefore reinstated the individuals' appeal.

## II.

### A.  Threshold Issues

Writing as amicus curiae, the American Civil Liberties Union of Rhode Island ("ACLU-RI") raises a challenge to the jurisdiction of the district court -- and, by extension, this Court -- over the state's claim of sovereign immunity. As a general matter, we do not consider arguments advanced only by an amicus, United States v. Sturm, Ruger & Co., 84 F.3d 1, 6 (1st Cir. 1996), nor do we ordinarily entertain challenges raised for the first time on appeal, Campos-Orrego v. Rivera, 175 F.3d 89, 95 (1st Cir. 1999). Given the purportedly jurisdictional dimensions of ACLU-RI's arguments, however, we shall address them fully. See In re Healthco Int'l, Inc., 136 F.3d 45, 50 n.4 (1st Cir. 1998) ("As in any other case, we must consider, sua sponte if need be, whether we possess subject matter jurisdiction over an appeal.").

ACLU-RI argues that Rhode Island has impermissibly sought review of agency action that is not "final" within the meaning of § 704 of the APA. See 5 U.S.C. § 704 (providing for judicial review of "final agency action"). The APA's finality requirement allows the agency an opportunity to apply its expertise and correct its mistakes, it avoids disrupting the agency's processes, and it relieves the courts from having to engage in "piecemeal review which at the least is inefficient and upon completion of the agency

-9-

process might prove to have been unnecessary." <u>FTC</u> v. <u>Standard Oil Co.</u>, 449 U.S. 232, 242 (1980).

Courts sometimes have viewed the finality requirement of the APA as being jurisdictional in nature. <u>See</u>, <u>e.g.</u>, <u>DRG Funding Corp.</u> v. <u>Sec'y of Hous. & Urban Dev.</u>, 76 F.3d 1212, 1214 (D.C. Cir. 1996). In our view, however, the issue of whether the APA provides for judicial review of the nonfinal ruling is not one that, precisely speaking, implicates the subject-matter jurisdiction of the court. <u>See</u> <u>Air Courier Conference</u> v. <u>Am. Postal Workers Union</u>, 498 U.S. 517, 523 n.3 (1991) ("The judicial review provisions of the APA are not jurisdictional . . . ."). Instead, the question is one of "[w]hether a cause of action exists" that permits review of an agency's interim denial of a state's claim of sovereign immunity. <u>Id.</u>; <u>cf.</u> <u>Bell</u> v. <u>Hood</u>, 327 U.S. 678, 682 (1946) (noting that "it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction").

Even though the asserted lack of finality does not directly challenge the subject-matter jurisdiction of the district court, the question of whether the state otherwise has a valid cause of action is an important one that we address as a threshold issue. Rhode Island does not dispute that the administrative proceedings were not yet final when it brought its claim for injunctive relief in the court below. Instead, the state argues that its constitutional claim of immunity finds footing, not in the APA, but in the federal court's equitable powers and in the more

-10-

general grant of federal-question jurisdiction provided by 28 U.S.C. § 1331.

We agree with the amicus that the ALJ's adverse immunity determination is not "final agency action" within the meaning of APA § 704. As the statute states, "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704. Thus, we have generally held that a final decision that may be reviewed or enforced in federal court is one that resolves not only the underlying claim, but also the relief to be afforded if liability is found. Rivera-Rosario v. U.S. Dep't of Agric., 151 F.3d 34, 37 (1st Cir. 1998). The state's claim of immunity is clearly not accompanied by a final determination on the underlying whistleblower claim. As such, the claim does not qualify as "final" under the APA.

That said, we are not convinced that the absence of "final agency action" renders the state's claim of immunity unreviewable until such time as the Secretary makes a final liability determination on the individuals' claims. Such a conclusion would essentially deprive the state of the very immunity to which it claims entitlement -- at least insofar as the state seeks to "prevent the indignity of [being] subject[ed] . . . to the coercive process of judicial tribunals at the instance of private parties." In re Ayers, 123 U.S. 443, 505 (1887) (noting that the right to be free from such proceedings is the "very object and purpose" of sovereign immunity). And given that the state's

-11-

asserted immunity is constitutional in scope, see P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 145 (1993) (stating that sovereign immunity involves "a claim to a fundamental constitutional protection"), we are bound by a strong presumption in favor of providing the state some vehicle for vindicating its rights.  See Davis v. Passman, 442 U.S. 228, 242 (1979) ("[T]he class of those litigants who allege that their own constitutional rights have been violated, and who at the same time have no effective means other than the judiciary to enforce these rights, must be able to invoke the existing jurisdiction of the courts for the protection of their justiciable constitutional rights.").

As a general matter, there is no statute expressly creating a cause of action against federal officers for constitutional or federal statutory violations.  But cf. 42 U.S.C. § 1983 (providing a statutory cause of action for deprivations of federal rights against officials acting under color of state law).  Nevertheless, our courts have long recognized that federal officers may be sued in their official capacity for prospective injunctive relief to prevent ongoing or future infringements of federal rights.  See Schneider v. Smith, 390 U.S. 17 (1968); Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 (1949); Philadelphia Co. v. Stimson, 223 U.S. 605 (1912); see generally Erwin Chemerinsky, Federal Jurisdiction § 9.2.2 (3d ed. 1999).  Such actions are based on the grant of general federal-question jurisdiction under 28 U.S.C. § 1331 and the inherent equity powers of the federal courts.  Though the existence of this long-

-12-

recognized equitable remedy provides a useful backdrop for our analysis, it does not entirely dispose of the immediate question before us. We must determine whether a cause of action exists that allows the state to vindicate its claim of sovereign immunity with respect to an administrative proceeding where there is no final reviewable order from the agency.

Our examination begins with "the strong presumption that Congress intends judicial review of administrative action." Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667, 670 (1986). The presumption of judicial review "may be overcome 'only upon a showing of clear and convincing evidence of a contrary legislative intent.'" Traynor v. Turnage, 485 U.S. 535, 542 (1988) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 141 (1967)). Thus, even where a litigant is unable to ground his action on either a specific or general statutory review provision, judicial relief is not necessarily foreclosed. See id. at 545; Bowen, 476 U.S. at 672. Given the right circumstances, review of agency action may be available in federal district court utilizing the procedures of so-called "nonstatutory review."[4] Chamber of Commerce v. Reich, 74 F.3d 1322, 1328 (D.C. Cir. 1996); see generally Richard H. Fallon et al., Hart and Wechsler's The Federal Courts and The Federal System 995-99 (4th ed. 1996) (discussing the pedigree and evolution of nonstatutory review).

---

[4] The term "nonstatutory review" is something of a misnomer, since all actions in federal court are based on a statute. See Clark Byse & Joseph V. Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action, 81 Harv. L. Rev. 308, 321 n.51 (1967).

The basic premise behind nonstatutory review is that, even after the passage of the APA, some residuum of power remains with the district court to review agency action that is <u>ultra vires</u>. <u>See</u> <u>Dart</u> v. <u>United States</u>, 848 F.2d 217, 224 (D.C. Cir. 1988). Such claims usually take the form of a suit seeking an injunction, often accompanied by a request for relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. <u>See</u> Clark Byse & Joseph V. Fiocca, <u>Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action</u>, 81 Harv. L. Rev. 308, 322 (1967). The nonstatutory review action finds its jurisdictional toehold in the general grant of federal-question jurisdiction of 28 U.S.C. § 1331. <u>Maxon Marine, Inc.</u> v. <u>Dir. of Office of Workers' Comp. Programs</u>, 39 F.3d 144, 146 (7th Cir. 1994).

The most notable example of a court deploying nonstatutory review after the passage of the APA can be found in <u>Leedom</u> v. <u>Kyne</u>, 358 U.S. 184 (1958). In <u>Kyne</u>, the Supreme Court held that a federal district court had jurisdiction to review a certification decision by the National Labor Relations Board that directly conflicted with a provision of the National Labor Relations Act, despite the absence of express authorization of judicial review of such determinations. <u>See</u> <u>id.</u> at 188-89. The Court stated that it "cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers." <u>Id.</u> at 190. Thus, after finding that the agency was violating a "clear" statutory

-14-

right, the Kyne Court held that an injunctive remedy to enforce that right was available in federal district court under the "statutory provisions governing general jurisdiction." Id.

Subsequent decisions have noted that Kyne describes a narrow exception to the general rule of exhaustion for review of administrative action. See, e.g., Boire v. Greyhound Corp., 376 U.S. 473, 481 (1964). In particular, the Supreme Court has emphasized that certain critical factors must be present to invoke nonstatutory review. One such factor is that the agency's nonfinal action must "wholly deprive the [party] of a meaningful and adequate means of vindicating its . . . rights." Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin. Inc., 502 U.S. 32, 43 (1991). The other critical factor is that Congress must not have clearly intended to preclude review of the agency's particular determination. Id. at 44. However, the evidence of Congress's intent to preclude review must be clear and convincing; it is not enough for the agency to merely contend "that a statutory provision that provide[s] for judicial review implie[s], by its silence, a preclusion of review of the contested determination." Id. Where either of these factors is absent, nonstatutory review is unavailable. See id.

Notwithstanding the limited circumstances under which nonstatutory review is available, we find that it was an appropriate vehicle for the state's claim of immunity in this case. Rhode Island's claim satisfies the specific limitations placed on nonstatutory review in the wake of Kyne; it satisfies other

-15-

considerations of equity generally implicated by such claims; and it involves a constitutional right that is amenable to resolution by a federal district court.

First, it seems beyond cavil that, absent immediate judicial review, an agency's adverse immunity determination will "wholly deprive the [state] of a meaningful and adequate means of vindicating its . . . rights." MCorp, 502 U.S. at 43. Since the state's sovereign rights encompass more than a mere defense from liability -- they include an immunity from being haled before a tribunal by private parties -- those rights would be lost without an early and authoritative ruling. See P.R. Aqueduct & Sewer Auth., 506 U.S. at 145.

Furthermore, we find no indication that Congress specifically intended to preclude review of the agency's immunity determinations. The SWDA provides a mechanism for facilitating judicial review of final determinations of whether an employer has unlawfully retaliated against an employee, see 42 U.S.C. §§ 6971(b), 6976(b), and such review procedures are normally considered exclusive. See Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 215 (1994); Whitney Nat'l Bank v. Bank of New Orleans & Trust Co., 379 U.S. 411, 420 (1965). However, an agency's ruling on the state's entitlement to sovereign immunity is "wholly collateral to a statute's review provisions and outside the agency's expertise." Thunder Basin, 510 U.S. at 212. We therefore find no intention to preclude review.

The general equitable considerations that favor relief based on a nonstatutory review action are also aligned in Rhode Island's favor. The state's right to relief is premised on a claim that federal officials are violating a clear right that is constitutional in nature. See Hunt v. Commodity Futures Trading Comm'n, 591 F.2d 1234, 1236 (7th Cir. 1979) ("[I]f an agency would violate a clear right of a petitioner by disregarding a specific and unambiguous statutory, regulatory, or constitutional directive, a court will not require the petitioners to exhaust his administrative remedies and will intervene immediately."). In addition, we have already noted that the SWDA's review provisions do not allow for immediate review of immunity rulings, and that the state's immunity would be effectively lost absent judicial review. See Morales v. Trans World Airlines, 504 U.S. 374, 381 (1992) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.") (citations and quotation marks omitted). Yet another factor supporting recognition of the state's claim is that its suit for injunctive relief involves a question that is strictly constitutional in scope, and does not require the application of agency expertise. Compare Califano v. Sanders, 430 U.S. 99, 109 (1977) ("Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions."), with Weinberger v. Bentex Pharm. Inc., 412 U.S. 645,

-17-

653 (1973) (declining relief where the issue was "peculiarly suited to initial determination" by the agency).  The state's immunity is a question best addressed by a federal court.

Finally, although sovereign immunity is generally asserted in a defensive posture, we believe that the peculiarities of raising the claim in an administrative proceeding make it appropriate to use immunity as a sword (rather than a shield) in an action for nonstatutory review.  There is precedent in this circuit for such a proposition.  In United States v. Puerto Rico, 287 F.3d 212 (1st Cir. 2002), we addressed a suit for injunctive and declaratory relief brought by the federal government to protect its sovereign interest against being forced to appear in an administrative proceeding of the Commonwealth of Puerto Rico.  There, we held that the United States had not waived its immunity in proceedings before the administrative agency and that the federal government was entitled to injunctive and declaratory relief consistent with that conclusion.  Id. at 221.  Although the instant case involves the sovereign interests of a state entity (rather than a federal one), we so no reason to foreclose relief on that basis.

We therefore hold that procedures of nonstatutory review permitted the district court to address the state's immunity claim.  Several district courts have already enjoined administrative whistleblower proceedings under 29 C.F.R. part 24 that were initiated against a non-consenting state by a private party.  See Conn. Dep't of Envtl. Prot. v. OSHA, 138 F. Supp. 2d 285 (D. Conn.

-18-

2001); <u>Florida</u> v. <u>United States</u>, 133 F. Supp. 2d 1280 (N.D. Fla. 2001); <u>Ohio Envtl. Prot. Agency</u> v. <u>U.S. Dep't of Labor</u>, 121 F. Supp. 2d 1155 (S.D. Ohio 2000). Although neither the decision of the court below nor the decisions from other districts expressly rely on the principles of nonstatutory review, we think that their approach and reasoning fit squarely within that doctrine.

We note, however, that an action before the district court may not be the <u>only</u> equitable means of seeking review of an agency's ruling with respect to an assertion of sovereign immunity by a state. As one prominent authority has stated, "initial district court action, followed by appeal to the court of appeals, seems almost self-defeating; in the rare case that may justify judicial intervention, it would be better to devise a direct remedy in the court of appeals . . . ." 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper <u>Federal Practice and Procedure</u> § 3943, at 815 (3d ed. 1996).

Arguably, direct review in the court of appeals would conform more closely to the judicial review provisions that govern liability determinations under the SWDA. In order to obtain such review, a petitioner could seek interlocutory review of the agency's immunity ruling based on an analogy to the collateral order doctrine. <u>See</u> <u>Meredith</u> v. <u>Fed. Mine Safety & Health Rev. Comm'n</u>, 177 F.3d 1042, 1046-52 (D.C. Cir. 1999) (employing the collateral order doctrine of <u>Cohen</u> v. <u>Beneficial Indus. Loan Corp.</u>, 337 U.S. 541 (1949), to review an agency's qualified-immunity ruling). In clear cases, the petitioning party could also seek a

-19-

writ of prohibition as necessary or appropriate in aid of the appeals court's jurisdiction.  See 28 U.S.C. § 1651(a) (the All Writs Act); see also In re Perry, 859 F.2d 1043, 1046-50 (1st Cir. 1988) (considering a petition for writ of prohibition against an administrative agency).  But in situations such as this, where "even good lawyers and good judges may be confused about where review of a particular action should be sought," Note, Jurisdiction to Review Federal Administrative Actions: District Court or Court of Appeals, 88 Harv. L. Rev. 980, 997-98 (1975) (quotation marks and footnotes omitted), we take a flexible approach that ensures that litigants retain a practical opportunity to subject administrative action to judicial control.

We conclude that this action was properly before the district court and that the action has, in turn, properly arrived before this panel.[5]  We therefore turn our attention to the questions of whether the district court erred in holding that the state was entitled to sovereign immunity in the administrative proceedings and whether injunctive relief was an appropriate means of protecting the state's interests.

---

[5]   The state raises its own threshold challenge to our jurisdiction, which we address only briefly. Rhode Island contends that this appeal was mooted by our dismissal of the individual appellants' earlier appeal from the order granting the preliminary injunction.  However, following our dismissal, the individual appellants moved for rehearing and for consolidation with the United States's appeal.  We treated this as the functional equivalent of a notice of appeal and reinstated the individuals' appeal.  Although Rhode Island now objects strenuously to our decision, it offers no developed argument challenging our authority to reinstate the appeal.  The reinstatement of the individuals' appeal therefore stands.

**B. Preliminary injunction**

Under this circuit's formulation, trial courts follow a four-part framework in determining whether preliminary injunctive relief is appropriate. The district court considers: first, the likelihood that the party requesting the injunction will succeed on the merits; second, the potential for irreparable harm if the injunction is denied; third, the balance of hardships to the parties if injunctive relief is either granted or denied; and fourth, the effect of the court's ruling on the public interest. Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996).

We generally review the district court's grant or denial of a preliminary injunction for an abuse of discretion. Id. This deferential standard, however, applies only to "issues of judgment and balancing of conflicting factors," and we still review rulings on abstract legal issues de novo and findings of fact for clear error. Cablevision of Boston, Inc. v. Pub. Improvement Comm'n, 184 F.3d 88, 96 (1st Cir. 1999) (quoting Ocean Spray Cranberries, Inc. v. Pepsico, Inc., 160 F.3d 58, 61 n.1 (1st Cir. 1998)).

**1. Success on the merits**

Appellants argue that the state has no claim to sovereign immunity in the privately prosecuted administrative proceedings at issue here. Recently, however, the Supreme Court handed down its decision in Federal Maritime Commission v. South Carolina State Ports Authority, 122 S. Ct. 1864 (2002) ("SCSPA"). We think this decision fairly disposes of any argument by the appellants that, as

-21-

a general proposition, a state's traditional immunity from suit does not extend to administrative proceedings initiated and prosecuted by private citizens.

In SCSPA, the Court faced the question of whether state sovereign immunity precludes the Federal Maritime Commission, an executive-branch administrative agency, from adjudicating a private party's complaint that a state-run port has violated the Shipping Act of 1984, 46 U. S. C. App. § 1701 et seq. After determining that the proceedings before the agency very much resembled a civil lawsuit, the Court held that "state sovereign immunity bars the [agency] from adjudicating complaints filed by a private party against a nonconsenting state." SCSPA, 122 S. Ct. at 1874. The Court reasoned:

> if the Framers thought it an impermissible affront to a State's dignity to be required to answer the complaints of private parties in federal courts, we cannot imagine that they would have found it acceptable to compel a State to do exactly the same thing before the administrative tribunal of an agency . . . .

Id.

Although SCSPA involved a different administrative agency, a different federal statute, and a different scheme of administrative adjudication, we see no basis for distinguishing SCSPA's central holding. The proceedings under 29 C.F.R. part 24 share with proceedings under the Shipping Act the salient characteristics that led the Supreme Court to determine that such adjudications were the "type of proceedings from which the Framers would have thought the States possessed immunity when they agreed

-22-

to enter the Union." Id. at 1872. That is, both proceedings are adjudicated before an ALJ, whose role is similar to that of a trial judge, id.; both proceedings are conducted in a manner that roughly conforms to the rules of procedure that govern the course of a traditional civil lawsuit, id. at 1873-74; and, finally, both proceedings culminate in a final decision that includes the types of relief typically available in civil litigation, see id. at 1874. We therefore conclude that a state is generally capable of invoking sovereign immunity in proceedings initiated by a private party under 29 C.F.R. part 24.

Our inquiry, however, is not entirely at an end. The doctrine of sovereign immunity is subject to numerous exceptions, see Alden, 527 U.S. at 755-57 (summarizing the limitations and exceptions to the states' sovereign immunity), and both the United States and individual appellants contend that one or more of these exceptions deprive Rhode Island of its immunity in the case at hand. We address these claims in turn.

### a. Waiver of immunity

It has long been recognized that a state's sovereign immunity is "a personal privilege which [the state] may waive at pleasure." Clark v. Barnard, 108 U.S. 436, 447 (1883); see generally Arecibo Cmty. Health Care, Inc. v. Puerto Rico, 270 F.3d 17, 24-25 (1st Cir. 2001) (discussing waiver principles), petition for cert. filed, 70 U.S.L.W. 3669 (U.S. Apr 15, 2002) (No. 01-1545). However, we do not make a finding of waiver lightly, so the "test for determining whether a State has waived its immunity

from federal-court jurisdiction is a stringent one." <u>Atascadero State Hosp.</u> v. <u>Scanlon</u>, 473 U.S. 234, 241 (1985). We address two possible bases for finding waiver -- the first argued by the individual appellants, and the second raised by us <u>sua sponte</u> in light of another recent decision of the Supreme Court.

First, in a curious variation on waiver doctrine, the individual appellants make the novel contention that Rhode Island is a "partial sovereign," unable to invoke the full extent of sovereign immunity available to other states. The appellants' argument begins with the premise that, at the time the United States Constitution was ratified, Rhode Island maintained a provision in its colonial charter allowing it to sue or be sued in the courts. Appellants then read the existence of this provision, along with Rhode Island's failure to explicitly reserve the right to claim sovereign status in subsequent manifestations of its state constitution, as conclusive proof that Rhode Island has no authority to now claim any degree of sovereign immunity.

A similar line of reasoning has already been considered and rejected by the Supreme Court. In the dissenting opinion in <u>Alden</u>, Justice Souter seized upon the historical experience of Rhode Island as proof that the concept of sovereign immunity remained unsettled at the time of the Constitution's ratification. <u>See</u> <u>Alden</u>, 527 U.S. at 769-70 (Souter, J., dissenting). However, <u>Alden</u>'s majority opinion drew a wholly different conclusion from the existence of sue-or-be-sued provisions in the charters of some colonies. As the Court stated,

> The handful of state statutory and constitutional provisions authorizing suits or petitions of right against States only confirms the prevalence of the traditional understanding that a State could not be sued in the absence of an express waiver, for if the understanding were otherwise, the provisions would have been unnecessary.

Id. at 724. The majority opinion also noted that any argument that Rhode Island did not recognize its own sovereign status is further belied by Rhode Island's proclamation in its ratification convention that "'[i]t is declared by the Convention, that the judicial power of the United States, in cases in which a state may be a party, does not extend to criminal prosecutions, or to authorize any suit by any person against a state.'" Alden, 527 U.S. at 718 (quoting 1 Jonathan Elliot, Debates on the Federal Constitution 336 (2d ed. 1854)).

If the analysis of the Alden majority were not potent enough, two additional factors counsel in favor of rejecting this novel waiver argument. First, the argument depends almost entirely on the existence of a provision merely allowing Rhode Island to sue or be sued in its own courts. The Supreme Court has repeatedly held that such provisions are insufficient to waive the state's immunity from suit in a federal forum. See, e.g., College Sav. Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 676 (1999); Atascadero State Hosp., 473 U.S. at 241; Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n, 450 U.S. 147, 150 (1981) (per curiam). Second, although the individual appellants contend that, under the state's organic law, Rhode Island has never been entitled to sovereign immunity, the highest

court of the state has long recognized that, absent statutory abrogation, Rhode Island adheres strictly to the doctrine of sovereign immunity.  See Laird v. Chrysler Corp., 460 A.2d 425, 428 (R.I. 1983); see also Becker v. Beaudoin, 261 A.2d 896, 901-02 (R.I. 1970) (abolishing the doctrine of municipal immunity but emphasizing that "it is to be understood that this decision does not in any manner abolish or limit the sovereign immunity that inheres in the state itself").  For these reasons, we decline to adopt the individual appellants' proposal that we recognize a "Rhode Island exception" to the general principles of sovereign immunity embedded in the structure of the Constitution.[6]

_____

[6]  We have previously held that Rhode Island General Laws § 9-31-1 effects a broad waiver of Rhode Island's sovereign immunity for certain claims in federal court.  Della Grotta v. Rhode Island, 781 F.2d 343, 347 (1st Cir. 1986); see also Laird, 460 A.2d at 429-30 (holding that § 9-31-1 waives the state's Eleventh Amendment immunity with regard to "actions in tort").  The individual appellants argued before the district court that § 9-31-1 also waived any immunity the state might have in the administrative proceedings.  The district court rejected this statutory waiver argument, reasoning that the whistleblower proceedings before the ALJ did not qualify as an "action[] in tort" within the meaning of the waiver statute.  Rhode Island, 115 F. Supp. 2d at 276-78. Although this statutory waiver argument strikes us as at least more promising than the other waiver arguments presented on appeal, the individual appellants' only attempt to preserve the issue consists of a single footnote in their appellate brief purporting to "incorporate their statutory waiver argument by reference" to a brief filed before the court below.  We deem the argument to have been forfeited.  Gilday v. Callahan, 59 F.3d 257, 273 n.23 (1st Cir. 1995).  Filing a brief that merely adopts by reference a memorandum previously filed in the district court does not comply with the Federal Rules of Appellate Procedure.  See Fed. R. App. P. 28(a)(6) (providing that argument must contain appellant's contentions and reasons therefor, with citations to authorities). Moreover, it is a practice "that has been consistently and roundly condemned by the Courts of Appeals," Cray Communications, Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390, 396 n.6 (4th Cir. 1994), and litigants in this circuit would be well advised to avoid it in the future.

In order to assess a second possible ground for waiver, we asked the parties the question of whether, in light of the Supreme Court's recent decision in <u>Lapides</u> v. <u>Board of Regents of the University System of Georgia</u>, 122 S. Ct. 1640 (2002), the state waived its immunity by filing an action in federal district court. Rhode Island and the United States both agree that the <u>Lapides</u> decision is inapplicable. However, the individual appellants disagree and contend that the state's litigation conduct did indeed strip it of its immunity from suit.

In <u>Lapides</u>, the plaintiff brought suit in state court against an arm of the state of Georgia, alleging violations of state and federal law. The state entity removed the case to federal court, and then moved to dismiss, asserting that it was immune from suit in federal court under the Eleventh Amendment. The Supreme Court noted that by removing the case the state entity "<u>voluntarily</u> invoked the jurisdiction of the federal court," <u>id.</u> at 1645 (emphasis in original). Accordingly, the Court held that "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter . . . in a federal forum." <u>Id.</u> at 1646.

The individual appellants read <u>Lapides</u> broadly to mean that a state waives its immunity by voluntarily participating in any facet of a federal adjudicative proceeding. In the words of the individual appellants:

> Rhode Island has engaged in a form of "Russian
> roulette" . . . . It acceded to the

-27-

> Administrative forum when it thought it could dispose of the case, and then reverted to a sovereign immunity defense after completing discovery, including depositions, issuance of subpoena, nineteen days of hearing before an [ALJ], and then was hit with an adverse decision. Adopting sovereign immunity at such a late point in the litigation is to wrongly seek "an unfair tactical advantage."

Individual Appellants' Supp. Br. at 6 (quoting Lapides, 122 S. Ct. at 1644). According to the individual appellants, the state could have preserved its immunity only by failing to appear before the ALJ and refusing to participate in the administrative proceedings entirely. See id. at 16.

This approach to waiver is startling in its breadth and, more importantly, appears to conflict directly with well established principles of law. It has repeatedly been held that a state may raise its immunity from suit at any time during the proceedings, including on appeal. See Edelman v. Jordan, 415 U.S. 651, 677-78 (1974); Larson v. United States, 274 F.3d 643, 648 (1st Cir. 2001) (per curiam); Paul N. Howard Co. v. P.R. Aqueduct & Sewer Auth., 744 F.2d 880, 886 (1st Cir. 1984). This venerable line of cases cannot be reconciled with the individual appellants' reasoning, under which a state would waive its immunity by doing nothing more than filing an answer to a complaint and conducting discovery. The Supreme Court gave no indication that its decision in Lapides would upset such established precedent. And as a practical matter, the individual appellants' approach to waiver is simply untenable, as it encourages states to assert their immunity by means of extra-judicial "self help," rather than through the

-28-

judicial channels that have been established by years of settled caselaw. We therefore decline to adopt the individual appellants' reasoning.

There is, however, another reading of Lapides -- one that is not so expansive as the individual appellants' approach, but expansive nonetheless -- that might also be implicated here. One could argue that the state, by invoking the federal jurisdiction of the district court in a nonstatutory review action, thereby waived its claimed immunity in the administrative proceedings. See Lapides, 122 S. Ct. at 1644 ("[T]he Court has made clear in general that 'where a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment.'") (quoting Gunter v. Atl. Coast Line R.R. Co., 200 U.S. 273, 284 (1906)).

Although it is something of a close question, we do not read Lapides to effect a waiver of Rhode Island's immunity in this case. We discern several critical distinctions between the situation presented here and the one presented to the Supreme Court in Lapides. To begin with, the state entity in Lapides had "explicitly waived immunity from state-court proceedings" on the same claims in respect to which it then sought immunity protection in federal court. 122 S. Ct. at 1643. It is reasonably apparent that the Supreme Court should be troubled by such an attempt to regain, by a change in forum, litigation advantage that the state has already renounced by a general statute. See Lapides v. Bd. of

<u>Regents of Univ. Sys. of Ga.</u>, 251 F.3d 1372, 1375 n.2 (11th Cir. 2001) (noting Georgia's statutory waiver with respect to the state tort claims in state court), <u>rev'd</u>, 122 S. Ct. 1640 (2002). Rhode Island, by contrast, was undoubtably entitled to immunity when the proceedings were first brought before the ALJ. <u>See</u> <u>SCSPA</u>, 122 S. Ct. at 1879. And, because we reject the individual appellants' argument that Rhode Island had waived immunity by its conduct in the administrative proceeding, we consequently discern no attempt by the state to reverse its waiver by a change in forum. Rather, Rhode Island has consistently asserted its sovereign immunity, both here and in the administrative proceeding.

Second, Rhode Island invoked the aid of the federal courts in an entirely new and different proceeding than the one in which it sought immunity. The removal of the state-court action in <u>Lapides</u> was merely a continuation of the same proceeding in a different forum.

Third, Rhode Island brought its claim in federal court for the sole and exclusive purpose of obtaining an immunity determination for the underlying whistleblower claims that remained pending before the administrative agency. In <u>Lapides</u>, however, the state entity moved the parties' entire dispute to federal court for a determination on all of the claims at issue.

We find these distinguishing characteristics, taken together, to place this case outside the reach of <u>Lapides</u>. Finding waiver here would not advance the policies that ordinarily motivate the rule. "In large part the rule governing voluntary invocations

-30-

of federal jurisdiction has rested upon the problems of inconsistency and unfairness that a contrary rule of law would create." Lapides, 122 S. Ct. at 1645. In this case, the state invoked the district court's aid, not to obtain an unseemly litigation advantage, but to clarify its entitlement to sovereign immunity where the agency's rules provided no means for doing so. Thus, if consistency and fairness are our guideposts, such considerations point away from finding waiver.

It would be a great irony for us to hold that a state waives its sovereign immunity solely by seeking judicial review of an agency's adverse (and incorrect) immunity determination, especially since there is "a strong presumption that Congress intends judicial review of administrative action." Bowen, 476 U.S. at 670. So extending Lapides would have the perverse effect of completely depriving the state of a primary benefit of sovereign immunity no matter what course it chooses. If the state cannot seek an interim judicial determination of immunity without waiving that very immunity, the state is constrained to participate in the proceedings all the way to their termination. While the state might be able to assert its immunity upon judicial review of the agency's final order, by that time the protections of sovereign immunity will have been reduced to a mere defense from liability. See P.R. Aqueduct & Sewer Auth., 506 U.S. at 145 ("[T]he value to the States of their [sovereign] immunity . . . is for the most part lost as litigation proceeds past motion practice."); accord SCSPA, 122 S. Ct. at 1877. To be sure, we have observed that litigation

-31-

may sometimes present the state with a difficult choice as to whether immunity should be waived. See WJM, Inc. v. Mass. Dep't of Pub. Welfare, 840 F.2d 996, 1004-05 (1st Cir. 1988) ("[A]n effective waiver [of sovereign immunity] . . . may occur even when the waiving party is between a rock and a hard place.") (citations omitted). But the waiver doctrine still requires the state to be able to make some choice, and using Lapides to deprive the state of its immunity in this case would allow the state no choice at all.

Finally, waiver occasioned by the state's litigation conduct -- a principle that was well established in this circuit prior to the Supreme Court's decision in Lapides[7] -- was not raised by any of the appellants before the district court or before this Court. Claims of waiver of immunity are like any other legal argument and may themselves be waived or forfeited if not seasonably asserted. See In re Gosselin, 276 F.3d 70, 72 (1st Cir. 2002) (holding that litigant's argument that a state waived its Eleventh Amendment immunity was not timely raised); see also Martinez v. Tex. Dep't of Criminal Justice, No. 00-51135, 2002 WL 1721803, at *6 (5th Cir. July 25, 2002) (holding that litigant forfeited any claim to Lapides-type waiver by failing to raise the issue below). We therefore find no waiver of the state's immunity.

---

[7] See Newfield House, Inc. v. Mass. Dep't of Pub. Welfare, 651 F.2d 32, 36 n.3 (1st Cir. 1981) (holding that a state entity waived its Eleventh Amendment immunity by having the case removed to federal court); see also Arecibo Cmty. Health Care, 270 F.3d at 27 (holding that Puerto Rico waived its sovereign immunity by filing a claim with the bankruptcy court); Paul N. Howard, 744 F.2d at 886 (holding that agency of the Commonwealth of Puerto Rico waived its immunity by filing a counterclaim and a third-party complaint).

### b. Congressional abrogation

A state's sovereign immunity may be abrogated by congressional enactment, <u>Alden</u>, 527 U.S. at 756, provided that Congress expresses its unequivocal intention to do so and acts pursuant to a valid grant of constitutional authority. <u>Laro</u> v. <u>New Hampshire</u>, 259 F.3d 1, 5 (1st Cir. 2001); <u>see also</u> <u>Bd. of Trs. of the Univ. of Ala.</u> v. <u>Garrett</u>, 531 U.S. 356, 363 (2001). While Congress may not base its abrogation of immunity upon the powers enumerated in Article I, it may subject non-consenting states to suit when legislating pursuant to a valid exercise of power under Section 5 of the Fourteenth Amendment.[8] <u>Laro</u>, 259 F.3d at 5; <u>see also</u> <u>Garrett</u>, 531 U.S. at 363-64.

The individual appellants argue that Rhode Island's immunity from suit has been abrogated because the whistleblower provisions of the SWDA were enacted pursuant to Section 5. Such an abrogation analysis is incomplete. Certainly, the individual appellants have a colorable argument that the SWDA's whistleblower provisions were enacted to safeguard First Amendment rights that

---

[8] Section 5 of the Fourteenth Amendment grants Congress the power to enforce the substantive guarantees contained in § 1 of the Fourteenth Amendment by enacting "appropriate legislation." Section 1 of the Fourteenth Amendment provides, in relevant part:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

have long been made applicable to states through the Fourteenth Amendment.  See Pickering v. Bd. of Educ., 391 U.S. 563, 574-75 (1968) (holding that the First and Fourteenth Amendments protect the right of public employees to speak on matters of public concern).  But in order to determine whether a federal statute properly exposes states to suits by individuals, we must also apply a "simple but stringent test: Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute."  Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 73 (2000) (citations and quotation marks omitted).  On this account, we find the individual appellants' argument wanting.

The individual appellants point to nothing in the Act indicating that Congress clearly expressed an intention to abrogate the states' immunity.  Nor, in reviewing the language of the SWDA ourselves, do we find any provision of the Act that remotely purports to abrogate the states' immunity.  The only provision of the Act addressing the question of sovereign immunity mandates that citizen civil suits under 42 U.S.C. § 6972 may enforce the Act's substantive provisions only "to the extent permitted by the eleventh amendment to the Constitution."  Id. § 6972(a)(1)(A).  If anything, this section indicates that Congress had no intention to disturb the states' traditional immunity from suit.  We therefore find no abrogation.[9]

---

[9]  Because we conclude that Congress did not unequivocally express an intention to subject the states to suits by private individuals, we need not address a remaining inquiry under Section 5 of the

#### d. **Ex parte Young exception**

Lastly, the appellants argue that, in accordance with the doctrine of Ex parte Young, 209 U.S. 123 (1908), there is no impediment to the administrative adjudication insofar as the complainants are seeking prospective equitable relief, such as reinstatement. Under our precedent, "[i]t is quite true that Ex parte Young avoids the [sovereign immunity] defense where prospective injunctive relief, not involving damages or property transfer, is sought against named state officials for a violation of federal law." Neo Gen Screening, Inc. v. New England Newborn Screening Program, 187 F.3d 24, 28 (1st Cir. 1999) (citing Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 276-77 (1997)).

In this case, the individual appellants contend that they have satisfied the Ex parte Young predicates: they named their managers at DEM in their administrative complaints; and they sought prospective equitable relief. If these conditions have truly been met, the complaint might not be barred by sovereign immunity.[10] Cf. Florida, 133 F. Supp. 2d at 1291-92 (allowing administrative

---

Fourteenth Amendment, namely, whether the SWDA's whistleblower provision creates the necessary "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." City of Boerne v. Flores, 521 U.S. 507, 520 (1997).

[10] We express no view as to whether an employee filing a complaint under 42 U.S.C. § 6971 may also seek monetary relief against a state official named in his individual capacity. Cf. Hafer v. Melo, 502 U.S. 21, 30-31 (1991) (holding that a state officer sued in his individual capacity may be held personally liable for damages under 42 U.S.C. § 1983 based upon actions taken in his official capacity).

-35-

whistleblower claims for injunctive relief to proceed against individuals named in their official capacity).  But we cannot properly assess the argument here because the individual appellants' brief contains no sustained argument in support of their claim and the record provides nothing conclusive.[11]  See Mass. Sch. of Law v. Am. Bar. Ass'n, 142 F.3d 26, 43 (1st Cir. 1998).  We therefore find that Ex parte Young does not, in this instance, circumvent the state's immunity.

### e.  Role of the federal government

"In ratifying the Constitution, the States consented to suits brought by . . . the Federal Government."  Alden, 527 U.S. at 755 (citing Principality of Monaco v. Mississippi, 292 U.S. 313, 328-29 (1934)).  Thus, sovereign immunity is no barrier to a suit initiated by the United States, even where the relief sought is monetary in nature.  Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 71 n.14 (1996); see also United States v. Texas, 143 U.S. 621, 644-45 (1892) (finding the power of the federal government to bring suit against states necessary to "the permanence of the Union").

The individual appellants argue first that the ARB, the body that directly reviews the decision of the ALJ, exercises sufficient political responsibility to negate Rhode Island's immunity.  In support of this contention, they point to the fact

---

[11]  We note, however, that Rhode Island asserts that the complaints did not name any individuals in their official capacity -- an assertion that is not challenged by the United States.  Moreover, there is no dispute that the individual appellants sought monetary relief in addition to their prayers for reinstatement.  See Rhode Island, 115 F. Supp. 2d at 271.

-36-

that the ARB's constituent members are each appointed by the Secretary of Labor, an executive branch official.

We find the mere nature of the ARB members' appointment insufficient to defeat sovereign immunity. The governing regulations clearly establish that the ARB reviews the decision of the ALJ only for the limited purpose of determining whether a violation of the law occurred. 29 C.F.R. § 24.8(d)(1). Once the ARB makes this determination, its course of action is limited: if the violation occurred, the ARB must order appropriate relief, id. § 24.8(d)(1) & (2); if no violation occurred, it must issue an order denying the complaint, id. § 24.8(e). There is nothing in the role defined for the ARB to suggest that its members may weigh the greater policy implications of affirming the ALJ's decision or denying the complaint. Thus, the presence of the ARB does not affect the sovereign immunity calculus.

Individual appellants next claim that the Secretary, rather than the individual complainant, is the "true" plaintiff in any administrative proceeding under 29 C.F.R. part 24. Thus, they contend that Rhode Island's sovereign immunity is inapplicable because the whistleblower claim proceedings are subject to the "exercise of political responsibility [by the federal government] for each suit prosecuted against a State, a control which is absent from a broad delegation to private persons to sue nonconsenting States." Alden, 527 U.S. at 756.

It is obvious from the regulatory scheme and governing APA provisions that the administrative adjudication is not directed

or prosecuted by the Secretary. Instead, the individual complainant tries a case against the employer, and the Secretary (through the ALJ) acts as the neutral arbiter of law and fact. See Butz v. Economou, 438 U.S. 478, 513 (1978) ("[T]he [ALJ] exercises his independent judgment on the evidence before him, free from pressures by . . . other officials within the agency."). There is simply no basis for construing the privately-prosecuted whistleblower claims at issue here as implicating the exercise of political responsibility by the federal government.[12]

We pause, however, to make one important observation. The governing regulations provide that the Secretary may, at any time, intervene in the proceedings before the ALJ as a party or amicus. 29 C.F.R. § 24.6(f)(1). Generally speaking, if the United States joins a suit after it has been initiated by otherwise-barred private parties and seeks the same relief as the private parties, this generally cures any Eleventh Amendment or sovereign immunity defect, and the private parties may continue to participate in the suit. See Mille Lacs Band of Chippewa Indians v. Minnesota, 124 F.3d 904, 913 (8th Cir. 1997), aff'd, 526 U.S. 172 (1999); Seneca Nation of Indians v. New York, 178 F.3d 95, 97 (2d Cir. 1999) (per

---

[12] The United States originally argued that the federal exercise of political responsibility necessary to avoid sovereign immunity could be found in the Secretary's ultimate decision whether to seek enforcement of her order in court. In the wake of SCSPA, it is clear that such an argument is a non-starter. As the SCSPA Court stated, "The Attorney General's decision to bring an enforcement action against a State after the conclusion of the [agency's] proceedings . . . does not retroactively convert an [agency] adjudication initiated and pursued by a private party into one initiated and pursued by the Federal Government." 122 S. Ct. at 1876.

curiam). Thus, our holding does not preclude the Secretary from intervening in the enjoined proceedings and removing the sovereign immunity bar. See Ohio Envtl. Prot. Agency, 121 F. Supp. 2d at 1167. To the extent the district court's injunction does not permit the Secretary to take such action, we modify the injunction accordingly.[13]

Notwithstanding this single caveat, we conclude that the district court was correct to hold that Rhode Island has demonstrated a likelihood of success on the merits. The states' immunity from suit embedded in the structure of the Constitution extends to adversary administrative proceedings that are prosecuted against an unconsenting state by a private party. See SCSPA, 122 S. Ct. at 1879. And in this case, the appellants have advanced no arguments that persuade us that a recognized exception to the immunity doctrine is applicable.

### 2. Other preliminary injunction factors

The individual appellants challenge the district court's rulings on each of the remaining preliminary injunction factors. Because we conclude that the district court did not abuse its discretion in evaluating any of the factors, we address these arguments only briefly.

The appellants first argue that the state failed to demonstrate that it would suffer irreparable harm in the absence of

---

[13] We also note, in agreement with the district court, that OSHA is not enjoined from receiving complaints, conducting its own investigations on such complaints, and making determinations as to liability under 29 C.F.R. § 24.4(d)(1).

an injunction. Such an argument downplays a fundamental aspect of the state's sovereign immunity. As we have already observed, the state's immunity is not merely a defense from liability; it is a safeguard against being subjected to "the coercive process of judicial tribunals at the instance of private parties." In re Ayers, 123 U.S. at 505. If a state cannot assert its immunity in the earliest stages of the adjudication, much of the benefit conferred by that immunity is irretrievably lost. P.R. Aqueduct & Sewer Auth., 506 U.S. at 145.

As for the balance of hardships, the individual appellants contend that their interests in gaining relief on their whistleblower claims outweigh the state's sovereign interests. Although we sympathize greatly with the appellants' stymied efforts to vindicate their rights, the Supreme Court has demonstrated on several occasions that employees' federal statutory rights may, in some circumstances, be subordinated to the sovereign interests of the states. See Garrett, 531 U.S. at 360 (holding that sovereign immunity bars state employees' claims under Title I of the Americans with Disabilities Act, 42 U.S.C. §§ 12111-12117); Kimel, 528 U.S. at 67 (same with regard to claims under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634); Alden, 527 U.S. at 712 (same with regard to claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219).

Lastly, the individual appellants argue that the issuance of an injunction runs counter to the public interest in protecting whistleblowers and promoting clean government. The district court

-40-

took these important interests into account, balanced them against the competing interests of federalism, and concluded that the issuance of the injunction did not offend the overall public interest.  We discern no abuse of discretion in the court's conclusion.

## III.

The order of the district court enjoining the administrative proceedings before the Department of Labor is **modified** to allow the Secretary of Labor, if she so chooses, to intervene in the proceedings before the ALJ, thereby curing any sovereign immunity bar.  In all other respects, the district court's order is **affirmed**.