# United States Court of Appeals
## For the First Circuit

No. 05-1153

JOAN TAYLOR,
Petitioner,

v.

UNITED STATES DEPARTMENT OF LABOR,
Respondent,

STATE OF RHODE ISLAND;
RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT,
Intervenors.

No. 05-1154

BEVERLY M. MIGLIORE,
Petitioner,

v.

UNITED STATES DEPARTMENT OF LABOR,
Respondent,

STATE OF RHODE ISLAND;
RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT,
Intervenors.

ON PETITION FOR REVIEW OF AN ORDER OF THE ADMINISTRATIVE
REVIEW BOARD OF THE UNITED STATES DEPARTMENT OF LABOR

Before

Torruella, <u>Circuit Judge</u>,
Campbell, <u>Senior Circuit Judge</u>,
and Howard, <u>Circuit Judge</u>.

<u>Richard E. Condit</u>, General Counsel, Public Employees for
Environmental Responsibility, was on brief, for petitioners.
<u>Joan Brenner</u>, Attorney, United States Department of Labor,

Office of the Solicitor, with whom Howard M. Radzely, Solicitor of Labor, Steven J. Mandel, Associate Solicitor, and Ellen r. Edmond, Senior Attorney, were on brief, for respondents.

Deborah A. George, Senior Legal Counsel, with whom James R. Lee, Assistant Attorney General, were on brief, for intervenors.

_____

December 12, 2005

_____

**TORRUELLA**, **Circuit Judge**.  This petition for review is the latest chapter in a long-running dispute between Joan Taylor ("Taylor") and Beverly M. Migliore ("Migliore") (collectively "appellants") on the one hand, and the State of Rhode Island ("State") and the Rhode Island Department of Environmental Management ("RIDEM") on the other.  We last encountered this case in 2002, when appellants sought review of a district court order that prevented the United States Department of Labor ("Department of Labor") from adjudicating their complaints that they had been fired in retaliation for reporting potential violations of the Solid Waste Disposal Act ("SWDA"), 42 U.S.C. §§ 6901-6992k.  See Rhode Island Dep't of Envtl. Mgmt. v. United States (RIDEM v. United States), 304 F.3d 31 (1st Cir. 2002).

In that case, we upheld the district court's order but modified it in that we allowed the Department of Labor to act where the Assistant Secretary for Occupational Safety and Health ("Assistant Secretary") intervened in the proceedings to remove any sovereign immunity bar.  Following our decision, the Assistant Secretary attempted to intervene in one suit brought by Migliore but declined to intervene in other suits by the appellants against the State and RIDEM.  In this petition, appellants contest this decision not to intervene and argue that regardless of the Assistant Secretary's inaction, they should be allowed to pursue their suits because the State has waived its sovereign immunity

-3-

through other means.  We disagree, and after careful consideration, we deny the petition for review and affirm the decision of the Administrative Review Board ("ARB") of the Department of Labor.

## I.  Background

This case has a complicated history.  In 1988, Migliore, an employee of RIDEM, filed with the Assistant Secretary three complaints against RIDEM, alleging that the state agency had violated the whistleblower provisions of the SWDA.  In particular, Migliore claimed that RIDEM violated the SWDA by retaliating against her for reporting what she believed to be RIDEM's failure to implement properly the SWDA.  After an investigation, however, the Assistant Secretary determined that the state agency had not violated the SWDA.  Migliore objected to the Assistant Secretary's findings and, as was her right, requested a hearing before an administrative law judge ("ALJ") at the Department of Labor.[1]  On August 13, 1999, following a lengthy hearing, the ALJ to whom the case had been assigned issued a recommended decision awarding Migliore both equitable relief and damages (Migliore I).  RIDEM then appealed the ALJ's decision to the ARB.

On August 31, 1999, Migliore filed another complaint with the Assistant Secretary (Migliore II) alleging that RIDEM had retaliated against her for pursuing her initial complaint.  After

---

[1]  For a full discussion of the administrative scheme established by the SWDA, see RIDEM, 304 F.3d at 37-38.

investigating, the Assistant Secretary found that RIDEM had indeed violated the whistleblower provisions of the SWDA by, among other things, issuing a statement to the media that attacked Migliore's credibility personally and went "beyond mere disagreement" with the ALJ's findings in Migliore I. The order accompanying the Assistant Secretary's determination awarded Migliore $10,000 in damages. RIDEM objected to the Assistant Secretary's findings and order in Migliore II and requested an ALJ hearing to appeal these matters. In its hearing request letter, RIDEM did not invoke a defense of sovereign immunity.

Also following the ALJ's decision in Migliore I, two of Migliore's co-workers, Taylor and Barbara Raddatz ("Raddatz"), filed whistleblower complaints with the Assistant Secretary alleging retaliation by RIDEM for their participation in Migliore I. After the Assistant Secretary quickly issued his determination that Raddatz's complaint lacked merit, Raddatz requested an ALJ hearing. During this period, the Assistant Secretary continued to investigate Taylor's complaint.

On February 21, 2000, while Migliore I was pending before the ARB and the Migliore II and Raddatz cases were pending before an ALJ, and while Taylor's complaint was being investigated by the Assistant Secretary, the State and RIDEM sought injunctive relief in federal district court. Alleging a violation of its sovereign immunity, the State sought to enjoin the Department of Labor from

-5-

further investigation and adjudication of the complaints of Migliore, Raddatz, and Taylor. On September 29, 2000, the district court enjoined the Department of Labor's adjudication of the complaints but declined to enjoin the Assistant Secretary's investigation of Taylor's complaint. See Rhode Island v. United States, 115 F. Supp. 2d 269, 279 (D.R.I. 2000). Shortly after this decision was handed down, the Assistant Secretary, in November 2000, issued a determination in Taylor's favor finding that her allegations had merit. He also ordered RIDEM to pay to Taylor $7,170 to reimburse her for her legal fees. RIDEM objected to the Assistant Secretary's findings and order and requested a hearing before an ALJ.

The appellants, along with Raddatz, then appealed the order of the district court. In 2002, this Court upheld the district court's order but modified it in one important respect. See RIDEM, 304 F.3d at 53-54. We held that the Secretary of Labor was not prohibited "from intervening in the enjoined proceedings and removing the sovereign immunity bar."[2] Id. Distinguishing cases that are barred by sovereign immunity, i.e., those pursued by private parties in federal courts or administrative tribunals against states, from cases that are not barred, i.e., those brought against states by federal administrative agencies to enforce

_____

[2] This Court's reference to "the Secretary of Labor" includes not only the Secretary of Labor herself, but also those working under her, such as the Assistant Secretary.

-6-

federal laws, we concluded that intervention by the Secretary in the enjoined cases would remove the sovereign immunity bar. See id. at 39, 53-54 (quoting from the district court's discussion of Alden v. Maine, 527 U.S. 706 (1999)).

On August 8, 2003, the Assistant Secretary filed a motion to intervene in Migliore I.[3] Rhode Island objected, contending that intervention would violate the district court's 2000 injunction, as modified by this Court's 2002 decision in RIDEM. Rhode Island therefore returned to district court seeking to enjoin the Assistant Secretary from intervening. On January 29, 2004, the district court granted Rhode Island's motion, ruling that the Assistant Secretary could not intervene in Migliore I, because Rhode Island's sovereign immunity is violated if intervention occurs at the time the case is before the ARB. Any intervention, stated the district court, had to occur "at or before the ALJ stage." See Rhode Island v. United States, 301 F. Supp. 2d 151, 156 (D.R.I. 2004). Since the Assistant Secretary could not intervene, the sovereign immunity bar was upheld, and the ARB was compelled to dismiss the case on April 30, 2004.

On May 13, 2004, the Secretary of Labor advised the appellants that she would not intervene in their suits against the State and RIDEM (Taylor and Migliore II). As a result, the ALJ dismissed, on sovereign immunity grounds, Migliore's complaint on

_____

[3] Recall that this case was already before the ARB at this point.

-7-

July 14, 2004, and Taylor's complaint on August 12, 2004.[4] Because the Secretary had decided not to intervene, the sovereign immunity bar remained.

The appellants then appealed the ALJ's dismissal of their complaints to the ARB. In two separate proceedings, the ARB affirmed the ALJ's actions. Although the ARB provided a number of reasons for its decisions to affirm, there are two grounds in particular that appellants challenge here. First, appellants had argued, using the reasoning of Lapides v. Bd. of Regents of the Univ. Sys. of Georgia, 535 U.S. 613 (2002), that the State had waived its sovereign immunity merely by requesting a hearing before the ALJ to contest the Assistant Secretary's initial findings. The ARB, however, dismissed this argument for two reasons. It held that our analysis of Lapides in RIDEM -- where we concluded that the State's pursuit of injunctive relief in the federal district court did not constitute a waiver of its sovereign immunity -- was equally applicable to the State's requests for ALJ hearings in the Taylor and Migliore II cases. It also recognized that there is a distinction between the stage during which the Assistant Secretary investigates complaints and the stage in which the ALJ adjudicates

_____

[4]  The Secretary of Labor also advised Raddatz at this time that she would not intervene in her suit against the State and RIDEM. As a result, the ALJ subsequently dismissed her complaint. Raddatz then appealed the ALJ's dismissal to the ARB. After the ARB affirmed the ALJ's dismissal, Raddatz, unlike the appellants here, declined to contest the ARB's decision before this Court.

-8-

those complaints. The ARB held that sovereign immunity can be raised as a defense only once the case moves from the investigatory to the adjudicatory stage. The only mechanism for moving the complaint to the adjudicatory stage where the sovereign immunity defense can be raised in the first instance is for one of the parties to request a hearing. In making this request for a hearing, the party is merely clarifying its entitlement to sovereign immunity, not waiving it.

Second, in affirming the ALJ's dismissal of the Taylor case, the ARB, noting that the Secretary had decided not to intervene, agreed with the ALJ that "neither the federal court decisions granting injunctive relief to Rhode Island nor other legal authorities" compelled the Secretary to intervene to prosecute Taylor's complaint. In re Joan Taylor, ARB Case No. 04-166 (Nov. 29, 2004). The ARB also cited this Court's statement in RIDEM that the Secretary may intervene "if she so chooses," 304 F.3d at 55, as well as the regulation at 29 C.F.R. § 24.6(f)(1), which states that the Secretary's designee may participate in the proceedings "at [his] discretion." Id.

It is the ARB's dismissals on these two grounds that the appellants challenge here.

## II. Discussion

### A. Standard of review

In <u>RIDEM</u>, we held that "the Secretary's final determinations under the whistleblower provisions [of the SWDA] are subject to review in the court of appeals in accordance with judicial review provisions of the APA [Administrative Procedure Act]." <u>RIDEM</u>, 304 F.3d at 38. Accordingly, the Secretary's decisions will be upheld unless they are "unsupported by substantial evidence" or are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 706(2)(A),(E). <u>See also</u> <u>Sasse</u> v. <u>Dep't of Labor</u>, 409 F.3d 773, 778 (6th Cir. 2005); <u>Simon</u> v. <u>Simmons Foods</u>, 49 F.3d 386, 389-90 (8th Cir. 1995).

### B. Sovereign immunity

Appellants' first claim is that despite the Secretary's refusal to intervene in their cases, the State has waived its sovereign immunity through other means. A state's sovereign immunity is "a personal privilege which it may waive at pleasure." <u>Clark</u> v. <u>Barnard</u>, 108 U.S. 436, 447 (1883). We have previously stated that "[a] state can waive its Eleventh Amendment immunity to suit in three ways: (1) by a clear declaration that it intends to submit itself to the jurisdiction of a federal court or administrative proceeding; (2) by consent to or participation in a federal program for which waiver of immunity is an express

condition; or (3) by affirmative conduct in litigation." New Hampshire v. Ramsey, 366 F.3d 1, 15 (1st Cir. 2004) (citations omitted).

**1.**

Appellants here invoke two separate kinds of waiver. First, they claim that the State has waived its sovereign immunity through its litigation conduct -- namely, by requesting hearings before an ALJ following the initial investigative findings by the Assistant Secretary. We note initially that we have confronted a similar argument in two of our recent cases. In both RIDEM and Ramsey, it was claimed that a state waived its sovereign immunity solely by seeking judicial review of an adverse administrative decision. In both cases, however, we rejected this argument, noting that the mere "seeking of judicial review of an agency decision . . . by a state that was a defendant before the agency" was insufficient alone to infer a waiver of immunity. Ramsey, 366 F.3d at 20; see also RIDEM, 304 F.3d at 49-50. The argument made here is slightly different, as it relates to the review of an administrative decision not before a federal Article III court, but rather before an federal administrative law judge. Nevertheless, we believe that the reasoning of our earlier opinions applies in this instance as well. See also Federal Maritime Comm'n v. South Carolina State Ports Auth., 535 U.S. 743, 760 (2002) (finding that the sovereign immunity enjoyed by states in federal courts also

-11-

applies in adjudications conducted by a federal administrative agency); Butz v. Economou, 438 U.S. 478, 513-14 (1978) (noting the similarities between adjudication by an administrative law judge in a federal administrative agency and adjudication by judges in a court).

We also find unconvincing an offshoot of this argument -- namely, appellants' claim that the State has waived its immunity through its litigation conduct because it has selectively invoked its immunity to gain a litigation advantage. Appellants draw this idea from two cases in particular: Lapides and Ramsey. In Lapides, the Supreme Court confronted a case in which the plaintiff had brought suit against the state in state court on a claim in which the state had statutorily waived its immunity. The state, in response, removed the case to federal court and moved to dismiss, asserting that it was immune from suit in federal court under the Eleventh Amendment. The Court held that in removing the case, the state had "voluntarily invoked the jurisdiction of the federal court" and therefore had waived its immunity by its litigation conduct. Lapides, 535 U.S. at 622. This decision was based in part on the inequity of allowing the state to reverse its statutory waiver by a change in forum.

In Ramsey (in a part of the opinion different from that discussed above), we were similarly distressed by a state's exploitation of its sovereign immunity to obtain unfair litigation

-12-

advantages. In that case, the State of New Hampshire made a "voluntary and calculated" choice to attempt to obtain the dismissal of a federal court action, wanting instead to litigate certain claims through a state administrative grievance procedure. Once the dismissal was granted, the state participated in the administrative grievance procedure, knowing that the procedure ultimately provided for federal judicial review. When the case did actually reach a federal court, the state tried to assert its sovereign immunity. We held, however, that because New Hampshire participated to its advantage in the grievance procedure to the detriment of its opponents, the state had waived its immunity by its litigation conduct. We said, in other words, that "the state, having gained the advantage that it sought, is bound by the choice that it made." Ramsey, 366 F.3d at 18.

Appellants argue that this case is similar to Lapides and Ramsey and that the State here has waived its immunity because it too used its immunity to gain a litigation advantage. In particular, the appellants point to how the State requested hearings before the ALJ when it was not compelled to do so. It had other means of preserving its rights -- namely, it could have simply waited for the determinations of the Assistant Secretary to become final and then defended in enforcement proceedings by

asserting sovereign immunity at that point.[5] Such a course of action would have come with a price. The State would have faced the daunting prospect of Secretarial involvement, and such involvement would have precluded the State from asserting its sovereign immunity.[6] ALJ hearings, by contrast, posed no such risk, according to the appellants, because in such a setting the State would be permitted to invoke sovereign immunity "at its pleasure."[7] In light of the litigation advantages that came with

---

[5] Here, appellants are relying on a provision in 29 C.F.R. § 24.4 (d)(2), which states: "If a request for [an ALJ] hearing is not timely filed, the notice of determination shall become the final order of the Secretary." Although we did not squarely address it, the appellees in Ramsey made an identical argument. See Ramsey, 366 F.3d at 20.

[6] If Taylor and/or Migliore had brought suit personally against the State in federal court to enforce the determinations of the Assistant Secretary, the State would have been able to invoke sovereign immunity. See 42 U.S.C. § 6972(a)(1)(A) (noting that citizen civil suits under 42 U.S.C. § 6972 may enforce the SWDA's substantive provisions only to the extent permitted by the Eleventh Amendment to the Constitution). If, however, the Secretary was the one to bring the enforcement action, the State would potentially face liability, as the Secretary is allowed to bring an action against a state to enforce a federal law without worrying about the sovereign immunity bar. See United States v. Texas, 143 U.S. 621, 644-45 (1892).

[7] There are two problems with this argument. First, appellants argue that the State could invoke its sovereign immunity "at its pleasure" before an ALJ because "the posture of the cases would become individuals versus the State." Appellants Reply Br. 5. We are not certain that this proposition is true. At the time that the State was deciding whether to request ALJ hearings in this case, in 1999 and 2000, the question of whether a state could claim sovereign immunity in an administrative proceeding remained an open one. This question was only resolved in 2002 with the Supreme Court's decision in Federal Maritime Comm'n, which held that the sovereign immunity enjoyed by states in federal courts also applies

-14-

the State's conscious decision to preserve its rights through ALJ hearings, appellants argue that we should hold that the State waived its immunity through its litigation conduct.

Such a choice, however, is different from the situation presented in Lapides or Ramsey. The State here never made a prior decision that affected its ability to invoke its immunity, as was the case in Lapides or Ramsey. To be sure, the choice faced by the State in this case related to immunity. But the State's decision to preserve its rights through an ALJ hearing (rather than through waiting for an enforcement action) was the first time it made any decision relating to that immunity. Indeed, it had to be. As the ARB correctly recognized, there is a clear distinction between the stage in which the Assistant Secretary investigates complaints and the stage in which the ALJ adjudicates those complaints. Sovereign immunity can be raised as a defense only once the case moves from the investigatory to the adjudicatory stage. The only mechanism

_____

in adjudications conducted by a federal administrative agency. 535 U.S. at 760. Nevertheless, for the sake of argument, we assume here that the appellants are correct and that the State could invoke its sovereign immunity "at its pleasure" in an ALJ hearing. Second, appellants are simply assuming that the Secretary would not intervene in an ALJ hearing. However, according to the regulations in effect in 1999 and 2000, the Assistant Secretary had the right to intervene. See 29 C.F.R. § 24.6(f)(1) (1999) and 29 C.F.R. § 24.6(f)(1) (2000). Since at that time the parties did not have the benefit of our 2002 decision in RIDEM saying that such intervention by the Assistant Secretary would remove the sovereign immunity bar, the effect of Secretarial intervention was perhaps not clear. Therefore, we decline to base our holding on such an argument and simply assume that the appellants are correct.

-15-

for moving the complaint to the adjudicatory stage where the sovereign immunity defense can be raised in the first instance is for one of the parties to request a hearing, as the State did here. Thus, this is not a situation, such as in Lapides, where the state has attempted "to regain, by a change in forum, [a] litigation advantage that [it] . . . already renounced by a general statute." Ramsey, 366 F.3d at 20 (discussing Lapides), or one such as in Ramsey, where New Hampshire tried to reverse the effects of a choice it had earlier made. In requesting ALJ hearings, the State here took advantage of its first opportunity to assert a sovereign immunity defense, a defense that was not available at the investigatory stage of the administrative proceedings.

The State here may have obtained a litigation advantage from its decision to pursue ALJ hearings. The Lapides-Ramsey line of cases, however, does not prevent a litigant from obtaining any sort of advantage relating to immunity in pursuing his case. They only condemn those litigation advantages that are "inconsistent" or "unfair." See Lapides, 535 U.S. at 622 (noting that the rules governing waiver by litigation conduct are motivated by "problems of inconsistency and unfairness"). Where the state tries to backtrack on immunity decisions it has already made, as was the case in both Lapides and Ramsey, such inconsistency and unfairness are evident. Nothing the State did in this case, however, can be deemed "unfair" or "inconsistent." See RIDEM, 304 F.3d at 49

-16-

(noting that the state has "consistently asserted its sovereign immunity . . . in the administrative proceeding").[8]  Therefore, we decline to find that the State waived its sovereign immunity as a result of its litigation conduct.

**2.**

Appellants also argue that the State has waived its sovereign immunity under R.I. Gen. Laws § 9-31-1, which waives the State's immunity "in all actions of tort in the same manner as a private individual or corporation."  Appellants argue that their employment discrimination claims here are tort actions in order to show that the State has waived its sovereign immunity in this case.  They also state that their claims closely resemble discrimination actions brought pursuant to 42 U.S.C. § 1983, which have been recognized as one type of claim that is covered by R.I. Gen. Laws § 9-31-1.  See Marrapese v. Rhode Island, 500 F. Supp. 1207 (D.R.I. 1980).

Whatever the merits of these arguments, appellants' reliance on R.I. Gen. Laws § 9-31-1 is misplaced.  Following this Court's decision in RIDEM, Taylor and Migliore never raised before either the ALJ or the ARB the applicability of the Rhode Island

---

[8]  See also Ramsey, 366 F.3d at 21 (noting, in its discussion of waiver of immunity from damages [as opposed to its discussion of waiver of immunity from prospective equitable relief], that New Hampshire gained no unfair litigation advantage as to damages by seeking judicial review of the grievance procedure because it "consistently asserted its immunity from damages when at issue.").

statute to their administrative cases. Nor is the argument referenced anywhere in the administrative record. Accordingly, appellants have forfeited the argument by failing to raise it during the administrative proceedings. See Disabled Americans for Equal Access, Inc. v. Ferries del Caribe, Inc., 405 F.3d 60, 65 (1st Cir. 2005) (noting that legal theories raised for the first time on appeal are waived); Okmyansky v. Herbalife Int'l of Am., Inc., 415 F.3d 154, 162 (1st Cir. 2005) (same); RIDEM, 304 F.3d at 50 (noting that "[c]laims of waiver of immunity are like any other legal argument and may themselves be waived or forfeited if not seasonably asserted.").

In their reply brief, appellants claim that these arguments relating to forfeiture invoke the doctrine of exhaustion -- i.e., that a party must exhaust his administrative remedies before proceeding before a court. In their attempt to show the inapplicability of such a doctrine here, appellants point out that the exhaustion doctrine is subject to certain exceptions. For example, they note that a party is not required to exhaust his administrative remedies where it would be futile for it to do so. See, e.g., Drinkwater v. Metropolitan Life Ins. Co., 846 F.2d 821, 826 (1st Cir. 1988) (discussing exhaustion in the context of ERISA). Appellants argue that it would have been futile in this case for them to raise R.I. Gen. Laws § 9-31-1 before the Secretary or her designees because these individuals had "no expertise in the

interpretation of Rhode Island law." They also note, alternatively, that exhaustion is not mandated and that it is within the discretion of the court as to whether to apply the doctrine (citing Acción Social de Puerto Rico, Inc. v. Viera Pérez, 831 F.2d 365, 369 (1st Cir. 1987)).

Appellants, however, are incorrect. Our discussion of forfeiture has nothing to do with exhaustion. There is no question that the appellants here did exhaust their administrative remedies. They first brought their cases before the Assistant Secretary, then faced an appeal before an ALJ, and finally appealed the dismissal of their actions before the ARB. There is nothing more they can be expected to do in the administrative setting. Our concern is that the appellants are raising this issue for the first time in this Court. If this petition is properly to be considered a review of the ARB's action, the appellants are required to have raised their arguments about R.I. Gen. Laws § 9-31-1 before the ARB, the ALJ, or the Assistant Secretary. See Massachusetts ex rel. Div. of Marine Fisheries v. Daley, 170 F.3d 23, 28 n.4 (1st Cir. 1999) ("Where agency action is taken upon an administrative record, it must . . . be reviewed based on that record.") (citation omitted). Because appellants did not raise the issue earlier, their argument about a waiver of sovereign immunity under R.I. Gen. Laws § 9-31-1 fails.

-19-

## C. Intervention by the Secretary

Finally, Taylor and Migliore claim that the Secretary's decision not to intervene in their cases violated the SWDA, because under that statute the Secretary has no discretion whether to enforce if a violation is found. Appellees, however, state that this is a non-issue, arguing that the Secretary's decision on whether to intervene is unreviewable by this Court under the Supreme Court's decision in Heckler v. Chaney, 470 U.S. 821, 832 (1985). In that case, the Supreme Court held that an agency's decision not to take requested action where the action is "committed to agency discretion by law" is presumptively unreviewable (quoting the Administrative Procedure Act, 5 U.S.C. § 701(a)(2)). The Court stated that review is not to be had in such instances because "a court would have no meaningful standard against which to judge the agency's exercise of discretion." Heckler, 470 U.S. at 830.

The appellants, in response, argue that the Court in Heckler also stated that the presumption of unreviewability may be rebutted "where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." Id. at 832-33. In other words, where there is a sufficient or meaningful standard provided in the governing statute, courts have something "against which to judge the agency's exercise of discretion," and judicial review is allowed. Massachusetts Pub. Interest Research

-20-

<u>Group, Inc.</u> v. <u>United States Nuclear Regulatory Comm'n</u>, 852 F.2d 9, 14 (1st Cir. 1988) (citing <u>Heckler</u>, 470 U.S. at 830). The appellants point to 42 U.S.C. § 6971(b) as providing a standard sufficient to guide judicial review in this case.

The key question, then, is whether a "meaningful standard" exists here against which we can judge the Secretary's decision not to intervene in the appellants' cases. <u>Id.</u> We need not resolve such a question, however, for even assuming that the appellants are correct and that 42 U.S.C. § 6971(b) provides such a standard, we find, after undertaking the requisite judicial review, that the Secretary's refusal to intervene in this instance was proper.

As we have already mentioned, appellants argue that where violations of the SWDA's employee protection provision have been found, the Secretary is required to act. In support of their argument, they cite to the text of 42 U.S.C. § 6971(b):

> [Upon receipt of a complaint, the Secretary of Labor shall cause such investigation to be made as he deems appropriate.] . . . Upon receiving the report of such investigation, the Secretary of Labor shall make findings of fact. If he finds that such violation did occur, he shall issue a decision, incorporating an order therein and his findings, requiring the party committing such violation to take such affirmative action to abate the violation as the Secretary of Labor deems appropriate . . . .

42 U.S.C. § 6971(b). Appellants are arguing, in other words, that once a violation is found, the Secretary has no discretion -- he

has mandatory duties that he must perform. To emphasize the mandatory nature of the Secretary's duties, appellants point to how in the section cited, Congress used the word "shall" to describe the Secretary's obligations no less than seven times (with the appellants citing instances not quoted in the above paragraph). They also note that "the word 'shall' is ordinarily the 'language of command'" (quoting Alabama v. Bozeman, 533 U.S. 146, 153 (2001)).

Appellants are correct that there is a procedure that the Secretary is required to follow in dealing with whistleblower complaints. Title 29 of the Code of Federal Regulations, pt. 24 implements the employee protection provision provided for in the SWDA, 42 U.S.C. § 6971, and provides procedures for Labor Department officials to follow when they receive a whistleblower complaint. The regulations appoint the Assistant Secretary to act for the Secretary and to undertake and complete an investigation within thirty days of the receipt of a complaint. 29 C.F.R. 24.4(d)(1). If the Assistant Secretary finds a violation, he is to issue a "notice of determination" that includes, among other things, an order requiring the party at fault to abate the violation. Any order, however, is only preliminary at the time the notice of determination is released. According to the regulations, any party desiring review of the determination or any part thereof is required to file a request for a hearing with the Chief

-22-

Administrative Law Judge within five business days. "If a request for a hearing is timely filed, the notice of determination of the Assistant Secretary shall be inoperative, and shall become operative only if the case is later dismissed." See 29 C.F.R. § 24.4(d)(1) & (2). When the notice of determination becomes inoperative, so does any order contained within it.

In the instant case, the Assistant Secretary, as per the regulations, made his determinations that there had been violations of the SWDA with regard to Taylor and Migliore and included orders requiring RIDEM to abate those violations. RIDEM, however, disagreed with the Assistant Secretary and therefore decided to appeal the determinations before an ALJ. When RIDEM filed these appeals, the determinations of the Assistant Secretary (including the orders accompanying them) automatically became inoperative. See 29 C.F.R. § 24.4(d)(1) & (2). Thus, the appellants are correct -- that if the Assistant Secretary finds that a violation [of the SWDA] did occur, he shall issue a decision "incorporating [his] findings and either order relief or dismiss the complaint." Appellant Br. 14 (citing to 42 U.S.C. § 6971(b)). We find that the Assistant Secretary performed his mandatory duty here.

However, the Assistant Secretary [or his boss, the Secretary] was not required to do more than this. As we have stated, once the Assistant Secretary issues his determinations and any orders, his mandatory duties are at an end. It then becomes

-23-

the responsibility of the parties, if they disagree with either those determinations or the accompanying orders, to appeal to the Chief Administrative Law Judge for a hearing. If such a hearing takes place, the Assistant Secretary is permitted to intervene "at [his] discretion," but nothing requires him to do so. See 29 C.F.R. 24.6(f)(1). We find, therefore, that the Assistant Secretary was not required to intervene in the ALJ proceedings in this case.

In the alternative, appellants concede that the Secretary [or through her, the Assistant Secretary] had broad discretion to determine whether or not to intervene. They contend, however, that when the Secretary exercised that discretion, she was required to provide an explanation for her decision. Here, appellants claim, such an explanation was absent. We find, however, nothing in either the controlling statute or the regulations that requires the Secretary or the Assistant Secretary to explain his or her reasons, and we decline to read such a requirement into these authorities.[9]

---

[9] Appellants also argue that an explanation was required in light of the fact that the Secretary's failure to intervene was contrary to "immediate past precedent" -- namely, the Secretary's decision to intervene in Migliore I. That case, however, was already before the ARB when the Secretary made her decision to intervene. Here, the Secretary faced a decision as to whether intervene before the ALJ. Considerations that may have been relevant to an appeal before the ARB may not have been relevant before the ALJ, and vice versa. For example, the Secretary may have had a sense that Migliore had a better chance of success before the ARB than before the ALJ. Therefore, because the circumstances of the two cases are not the same, Migliore I is not properly to be considered "immediate past precedent," as appellants suggest.

Although the Assistant Secretary must provide a "statement of reasons" when he issues his initial determination, he is not required to issue such a statement when he refuses to intervene before an ALJ.

### III.  Conclusion

For the reasons set forth above, we deny the petition for review and affirm the decision of the Administrative Review Board of the Department of Labor.

**<u>Affirmed</u>**.