[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13350
Non-Argument Calendar

_____

Agency No. A206-698-080

OSBERTO FRANCISCO RAMOS VASQUEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 29, 2018)

Before JILL PRYOR, FAY and JULIE CARNES, Circuit Judges.

PER CURIAM:

Osberto Francisco Ramos-Vasquez, a Guatemalan citizen, seeks review of a final order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of his application for asylum and withholding of removal.  On appeal, Ramos-Vasquez argues that the BIA erred in determining that his proposed "particular social group"—young men who refuse recruitment by transnational criminal organizations and are targeted as a consequence—was not cognizable under the Immigration and Nationality Act ("INA").  He also argues that the BIA erred in finding that he failed to prove a nexus between his membership in such group and any persecution he suffered or fears.  After careful review, we deny Ramos-Vasquez's petition.

## I.    BACKGROUND

Ramos-Vasquez entered the United States in April 2014 and was issued a notice to appear by the Department of Homeland Security the next month.  He conceded that he was removable because he lacked a valid entry or travel document.  A year later, Ramos-Vasquez filed an application for asylum and withholding of removal based on his membership in a particular social group.

At a merits hearing, Ramos-Vasquez's attorney argued that the "particular social group" to which Ramos-Vasquez belonged was "young men who refuse recruitment by transnational criminal organization[s]" and "[w]ho are targeted as a

2

consequence of repeated refusal." A.R. 150-51.[1]  In support of his application,

Ramos-Vasquez testified that he left Guatemala because he had been threatened by

members of the Mara-18 gang.  He explained that on December 23, 2012, seven or

eight armed gang members had approached him and demanded that he join their

gang or they would kill him.  When he refused, they started hitting and kicking him

until he lost consciousness.  He did not go to the hospital because he was afraid

that the gang would find and kill him, and he did not go to the police because he

believed they were allied with the gang.

Ramos-Vasquez did not leave his house again until December 28, 2012,

when he went to the store with his niece.  While they were out, a truck stopped,

and several masked men surrounded him.  They beat him, put a bag over his head,

and threw him in the truck.  Ramos-Vasquez was taken to a cabin where he and

three others were tortured.  For a month, they were tied up, hit, and kicked, and

food was thrown at them.  Although he did not see his captors' faces, he believed

they were part of a gang because of their tattoos.  The captors called Ramos-

Vasquez's mother and demanded she pay ransom.  His family paid the ransom, but

his captors did not release him.  He and two other detained people finally escaped

by kicking a hole in the wall and crawling out.  The fourth captive was shot while

attempting to escape and did not make it out.  The two other escapees went to the

---

[1] Citations to A.R. refer to the administrative record.

3

police, but Ramos-Vasquez did not.  He testified that he knew that the police would not do anything.  Ramos-Vasquez's mother eventually picked him up.  He and his niece left Guatemala together.

Ramos-Vasquez's niece also testified.  She explained that she did not call the police after gang members grabbed her uncle because she was very scared. During the time that Ramos-Vasquez was being held captive, she was afraid to leave the house because she thought something would happen to her or her family if she was seen by the gang members.  She also testified that she thought Ramos-Vasquez could be killed by gang members if he returned to Guatemala because he had been able to escape them.  She did not think that anyone, including the police, could protect them if they returned.

The IJ issued an oral decision denying Ramos-Vasquez's application.  As relevant here, the IJ determined that Ramos-Vasquez's proposed social group of young men who refuse recruitment by a transnational criminal organization who are targeted as a consequence of the refusal did not qualify as a particular social group.  The IJ also found that the harm Ramos-Vasquez suffered was the result of criminal activity and that being targeted by criminals in pursuit of criminal activity was not persecution on account of a protected ground.  Accordingly, the IJ found that Ramos-Vasquez had failed to establish past persecution or a well-founded fear

of future persecution on account of a protected ground, which was fatal to his asylum and withholding of removal claims.

Ramos-Vasquez filed a notice of appeal to the BIA. The BIA affirmed the IJ's decision, agreeing with the IJ that Ramos-Vasquez's proposed group was not a cognizable particular social group under the INA. It also agreed that Ramos-Vasquez's claimed past harm and fear of future harm was not "on account of" a protected ground because "[r]etaliation for refusing to engage in criminal activity [was] insufficient to establish a nexus to a protected ground." A.R. 4. Accordingly, the BIA dismissed Ramos-Vasquez's appeal. He appealed the dismissal to this court.

## II.    STANDARDS OF REVIEW

"We review only the BIA's decision, except to the extent that it expressly adopt[s] the IJ's opinion or reasoning." *Shi v. U.S. Att'y Gen.*, 707 F.3d 1231, 1234 (11th Cir. 2013) (internal quotation marks omitted) (alteration in original). Where the BIA agrees with the IJ's reasoning, we will review the decisions of both the BIA and the IJ to the extent of the agreement. *See Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009).

We review *de novo*, as a question of law, whether an asserted group qualifies as a particular social group under the INA, *Malu v. U.S. Att'y Gen.*, 764 F.3d 1282, 1286, 1290 (11th Cir. 2014), but we defer to the BIA's formulation of criteria for

determining whether a particular group qualifies, *Castrillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1196 (11th Cir. 2006).  "[S]ingle-member BIA decisions that rely on precedential BIA opinions are entitled to *Chevron* deference."  *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 404 (11th Cir. 2016) (emphasis omitted).  "Accordingly, we must follow the BIA's determination that [Ramos-Vasquez's proposed group is] not a social group under the INA unless the interpretation is unreasonable, i.e., arbitrary, capricious, or clearly contrary to law."  *Castrillo-Arias*, 446 F.3d at 1196.

We review administrative findings of fact under the substantial evidence standard.  *Antipova v. U.S. Att'y Gen.*, 392 F.3d 1259, 1261 (11th Cir. 2004).  Under the substantial evidence standard, we must affirm the BIA's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Id.* (internal quotation marks omitted).  We "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision."  *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).  Accordingly, we will not reverse unless the evidence compels a reasonable fact finder to find otherwise.  *Antipova*, 392 F.3d at 1261.

### III.    ANALYSIS

Ramos-Vasquez argues that the BIA erred in concluding he was ineligible for asylum or withholding of removal.  An undocumented immigrant who is present in the United States may apply for asylum.  8 U.S.C. § 1158(a)(1).  The government has discretion to grant asylum if the applicant establishes that he is a "refugee," *id.* § 1158(b)(1)(A), defined as a person "who is unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of, [his . . . country of nationality] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion,"  *id.* § 1101(a)(42)(A).  The applicant must demonstrate that one of these protected grounds "was or will be at least one central reason for persecuting" him.  *Id.* § 1158(b)(1)(B)(i).

Similarly, to qualify for withholding of removal, an applicant must establish that his "life or freedom would be threatened in [his] country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1231(b)(3)(A).  The applicant must show that it is more likely than not that he will be persecuted on account of a protected ground if returned to his home country.  *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013).  The "more likely than not" standard is more stringent than the "well-founded fear" standard applicable to asylum applications; thus, if an applicant is unable to meet

7

the "well-founded fear" standard for asylum, he generally is unable to qualify for withholding of removal. *Kazemzadeh*, 577 F.3d at 1352.

Ramos-Vasquez argues that he qualifies for asylum and withholding of removal based on his persecution for being a member of a particular social group. To qualify as a particular social group, the group must have a common characteristic that is either immutable or fundamental to their individual conscience or identity. *Castillo-Arias*, 446 F.3d at 1193-94, 1196-97. In addition, the group must: (1) have sufficient social distinction, (2) not be defined exclusively by the risk of persecution, and (3) not be too numerous or inchoate. *Id.* at 1194, 1196-98. Social distinction requires a group to be socially distinct within the society in question, i.e., it must be perceived as a group by the society as a whole, rather than by the perception of the persecutor. *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 242 (BIA 2014).

The particular social group to which Ramos-Vasquez asserts he belongs is "young men who refused recruitment by a transnational criminal organization [who are] targeted as a consequence of their repeated refusal." Petitioner's Br. at 11. Applying *Chevron* deference to the BIA's legal determination that Ramos-Vasquez's proposed group was not cognizable under the INA, *see Gonzalez*, 820 F.3d at 404-05, we conclude that the determination was reasonable.

In rejecting Ramos-Vasquez's proposed group, the BIA relied on two precedential BIA decisions establishing that resistance to gang membership did not constitute a particular social group: *Matter of S-E-G-*, 24 I. & N. Dec. 579 (BIA 2008), and *Matter of E-A-G-*, 24 I. & N. Dec. 591 (BIA 2008). In the first decision, the BIA concluded that Salvadoran youth who resisted gang membership did not constitute a particular social group because the proposed group lacked social distinction and particularity. *See Matter of S-E-G-*, 24 I. & N. Dec. at 584-88. In the second decision, the BIA explained that young Honduran men resistant to gang membership lacked the requisite social distinction to constitute a particular social group:

> Persons who resist joining gangs have not been shown to be part of a socially visible group within Honduran society, and the respondent does not allege that he possesses any characteristics that would cause others in Honduran society to recognize him as one who has refused gang recruitment. Of course, individuals who resist gang recruitment may face the risk of harm from the rejected gang. But such a risk would arise from the individualized reaction of the gang to the specific behavior of the prospective recruit.

*Matter of E-A-G-*, 24 I. & N. Dec. at 594. Ramos-Vasquez similarly has failed to show that his proposed social group of young men who resist recruitment into a transnational criminal group is perceived as a socially distinct group in Guatemalan society. Ramos-Vasquez submitted reports stating that gang violence poses a serious problem in Guatemala and that the "join or die" policies of many gangs in Central America have led to an increase in emigration out of those countries. A.R.

9

at 284.  This evidence, though very troubling, is insufficient to establish that men who resist recruitment into gangs are viewed by Guatemalan society as members of a socially distinct group.  *See Matter of M-E-V-G-*, 26 I. & N. Dec. at 242.

The other defining characteristic of Ramos-Vasquez's proposed social group is its members' targeting by gangs, which cannot on its own form the basis of a particular social group.  *See Rodriguez*, 735 F.3d at 1310 ("The risk of persecution alone does not create a particular social group within the meaning of the INA." (internal quotation marks omitted)).  Thus, the BIA's determination that his proposed group was not cognizable under the INA was reasonable.

Even assuming that Ramos-Vasquez had identified a cognizable particular social group, the record does not compel a finding that his persecution was "on account of" his membership in the group.  8 U.S.C. § 1101(a)(42)(A) (asylum); *Rodriguez*, 735 F.3d at 1308 (withholding of removal).  Ramos-Vasquez described traumatizing events, and we do not take lightly his fear of retaliation should he return to Guatemala.  But substantial evidence supports the IJ's finding that the gang members were motivated not by Ramos-Vasquez's membership in his proposed group, but by a financial motive to obtain ransom money or a personal dispute regarding his refusal to join the gang.  As the BIA correctly noted, "retaliation for refusing to engage in criminal activity is insufficient to establish a nexus to a protected ground."  A.R. at 4; *see Ruiz v. U.S. Att'y Gen.*, 440 F.3d

10

1247, 1258 (11th Cir. 2006) ("[E]vidence that . . . is consistent with acts of private violence . . . does not constitute evidence of persecution based on a statutorily protected ground."). On this record, we cannot say that the BIA erred in denying Ramos-Vasquez's application for asylum or withholding of removal.

## IV.    CONCLUSION

For the foregoing reasons, Ramos-Vasquez's petition is denied.

**PETITION DENIED.**